UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| COSMOPOLITAN TITLE AGENCY, LLC, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 5: 22-286-DCR |
| V. | ) ) ) | |
| JP MORGAN CHASE BANK, N.A., et al., | ) ) | **AMENDED MEMORANDUM OPINION AND ORDER** |
| Defendants. | ) ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Plaintiff Cosmopolitan Title Agency, LLC ("Cosmopolitan") seeks to recover funds that it sent *via* wire transfer to an alleged fraudster's PNC bank account.[1] Defendant PNC Bank, N.A. ("PNC") has filed a motion to dismiss the claims advanced by Cosmopolitan pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  PNC argues, *inter alia*, that Cosmopolitan bears the loss under Article 4A of the Uniform Commercial Code ("U.C.C."), as adopted in chapter 355 of the Kentucky Revised Statutes.  It further contends that Cosmopolitan's common law claims are preempted [Record Nos. 18, 19.]  Cosmopolitan opposes the motion, arguing that it has plausibly pled facts indicating that it does not bear the loss and that its common claims are not inconsistent with Article 4A.  [Record No. 25]

PNC's motion to dismiss will be granted, in part, and denied, in part.  Cosmopolitan has plausibly pled that its wire transfer was canceled before PNC accepted it, satisfying section

---

[1] This Amended Memorandum Opinion and Order is filed to correct typographical errors contained in the first paragraph of the Memorandum Opinion and Order filed January 6, 2023 [Record No. 31].

- 1 -

355.4A-211 of the Kentucky Revised Statutes. However, its common law claims are preempted because Article 4A addresses Cosmopolitan's underlying injury and PNC's alleged misconduct. Cosmopolitan's common law claims also create rights inconsistent with the U.C.C. as adopted in Kentucky.

## I.

The following facts are accepted as true for the purposes of this motion to dismiss. Cosmopolitan is a real estate title company providing escrow services. [Record No. 25] On March 25, 2022, a real estate buyer agreed to purchase property for $19,990 and provided Cosmopolitan with a $70,000 cashier's check. [Record No. 16] Cosmopolitan immediately deposited the check into its escrow account with J.P. Morgan Chase Bank, N.A. ("Chase"). [*Id.*] On March 30, 2022, Cosmopolitan wired an overage amount of $49,014.14 from Chase to PNC, as directed by the real estate buyer. [*Id.*] "Almost simultaneously with this wire transfer," Cosmopolitan discovered that the buyer defrauded it. [*Id.*] The company then submitted a wire transfer recall "within ten minutes" and contacted PNC directly about the matter. [*Id.*]

PNC allegedly told Cosmopolitan that Chase needed to file a dispute directly with PNC, and the matter was referred to PNC's "security department [which] would begin investigating the matter and reach back out to [Cosmopolitan] in the next few days." [*Id.*] Chase failed to file a dispute, and PNC did not contact Cosmopolitan with investigative findings. [*Id.*] PNC allowed the alleged fraudster to withdraw the funds "despite . . . fraud associated with the account." [*Id.*]

On April 7, 2022, Chase sent a wire recall to PNC, which was rejected on April 13, 2022, due to insufficient funds. [*Id.*] Cosmopolitan filed suit against Chase and PNC alleging

violation of section 4A-211 of the U.C.C. for failure to return the funds after cancelation of the payment order. [Record No. 1-2] It also alleged negligence *per se* based on section 4A-211, conversion, negligence, negligence *per se* for receiving stolen property, and punitive damages. [*See* Record No. 16.]

## II.

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). When considering a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must determine whether the complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The plausibility standard is met when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Twombly*, 550 U.S. at 556). A court must "accept all of plaintiff's factual allegations as true and determine whether any set of facts consistent with the allegations would entitle" him or her to relief. *G.M. Eng'rs & Assoc., Inc. v. W. Bloomfield Twp*., 922 F.2d 328, 330 (6th Cir. 1990).

## III.

The parties agree that Article 4A of the Uniform Commercial Code, as adopted in Kentucky, governs Count V and the transaction in question constitutes a funds transfer. A funds transfer is a "*series* of transactions, beginning with the originator's payment order made for the purpose of making payment to the beneficiary of the order." KY. REV. STAT. ANN. § 355.4A-104 (LexisNexis 2022) (emphasis added). The originator is the "sender of the first payment order," and the originator's bank is "the receiving bank to which the payment order

of the originator is issued if the originator is not a bank . . . ." *Id.* The beneficiary is "the person to be paid by the beneficiary's bank," and the beneficiary's bank is "the bank identified in a payment order in which an account of the beneficiary is to be credited . . . ." *Id.* § 355.4A-103. An intermediary bank is "a receiving bank other than the originator's bank or the beneficiary's bank." *Id.* § 355.4A-104. Here, Cosmopolitan is the originator, Chase is the originator's bank, the beneficiary is a non-party alleged fraudster, and the beneficiary's bank is PNC.

Count V alleges that PNC "violated KRS §355.4A-211(2) by failing to cancel the wire transfer and allowing the funds to be withdrawn." [Record No. 16] PNC argues that this count fails because "there was no cancellation [of the wire transfer] and the payment order had been accepted by PNC." [Record No. 19, p. 4] The statute states

> a communication by the sender canceling or amending a payment order is effective to cancel or amend the order if notice of the communication is received at a time and in a manner affording the receiving bank a reasonable opportunity to act on the communication *before* the bank accepts the payment order.

§ 355.4A-211(2) (emphasis added). Additionally, section 355.4A-209 indicates, in relevant part, that a beneficiary's bank accepts a payment order when it: (1) "[p]ays the beneficiary"; (2) "[n]otifies the beneficiary of receipt of the order"; (3) "receives payment of the entire amount of the sender's order"; or (4) "[t]he opening of the next funds-transfer business day . . . unless the order was rejected before that time." The sender can unilaterally cancel or amend a payment order if the receiving bank has not yet accepted the order. § 355.4A-211 cmt. 3. "When a wire transfer has not yet been accepted, all that is required for cancellation is for the

originator of the transfer to request that the transfer be stopped." *Commodity Futures Trading Comm'n v. Rust Rare Coin Inc.*, 469 F. Supp. 3d 1211, 1216 (D. Utah 2020).[2]

Here, Cosmopolitan alleges that it sent a wire recall within ten minutes of submitting its payment order, and "the wire recall cleared . . . and was sent to Defendant PNC Bank" the same day.[3] [Record No. 16] Cosmopolitan has plausibly alleged that PNC received the recall before accepting the payment order. *See Jakob v. JPMorgan Chase Bank, N.A.*, No. 22-CV-03921, WL 16798071, at *4 (E.D.N.Y. Nov. 8, 2022) ("If Plaintiff truly requested a cancellation immediately, then his request was arguably received before Defendant executed the wire transfer.").[4]

---

[2] "When uniform laws such as the UCC have been adopted by several states, the courts of one state may refer to decisions from another state and may construe the statutes in accordance with the construction given by that state." *Experi-Metal, Inc. v. Comerica Bank*, No. 09–148902011, WL 2433383, at *11 n.3 (E.D. Mich. June 13, 2011) (quoting *Yamaha Motor Corp., U.S.A. v. Tri–City Motor Sports, Inc.,* 429 N.W.2d 871, 876 (1988)).

[3] PNC appears to argue that the complaint alleges *Chase* failed to send a proper communication to PNC to cancel the payment order. But the complaint also indicates that PNC received a wire recall communication the same day as the payment order and "[l]itigants in federal court may pursue alternative theories of recovery, regardless of their consistency." *Brookhaven Landscape & Grading Co., Inc. v. J. F. Barton Contracting Co.*, 676 F.2d 516, 523 (11th Cir. 1982) (citing Fed. R. Civ. P. 8(e)(2)).

[4] PNC argues for the first time in its reply that a "recall" cannot act as a cancelation because PNC requested Chase to file a dispute, and a wire recall is a "*different* type of communication." [Record No. 29] PNC does not cite any supporting authority, but more importantly, it cannot raise this argument for the first time in its reply brief. *See Malin v. JPMorgan*, 860 F. Supp. 2d 574, 577 (E.D. Tenn. 2012) ("It is well-settled that a movant cannot raise new issues for the first time in a reply brief because consideration of such issues 'deprives the non-moving party of its opportunity to address the new arguments.'" (citation omitted))). PNC's argument lacks merit even if it could be brought at this stage. *Cf. Fischer & Mandell, LLP v. Citibank, N.A.*, 632 F.3d 793, 801-02 (2nd Cir. 2011) (treating the sender's "instruction to recall the wire transfers" as an attempt to "request to cancel").

PNC also contends that Cosmopolitan's common law claims—Counts VI through IX—are pre-empted by U.C.C. Article 4A. [Record No. 19] Cosmopolitan states that "if this Court finds that a statutory cause of action can be brought based upon KRS §355.4A-211, then the Plaintiff concedes that Counts VI and VII should be dismissed . . . ." [Record No. 25] The remaining claims assert negligence (Count VIII) and negligence *per se* for receiving stolen property (Count IX). [Record No. 16]

"[R]esort to principles of law or equity outside of Article 4A is not appropriate to create rights, duties and liabilities inconsistent with those stated in [the] Article." § 355.4A-102 cmt.; *see also Wright v. Citizen's Bank of East Tenn.*, 640 F. App'x 401, 406 (6th Cir. 2016) ("Article 4A displaces common-law claims relating to wire transfers if the claims arise out of a situation addressed by Article 4A or attempt to create rights, duties, or liabilities inconsistent with Article 4A."). "[T]he critical inquiry is whether [the Article's] provisions protect against the type of underlying injury or misconduct alleged in a claim." *Ma v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 597 F.3d 84, 89-90 (2d Cir. 2010). "Article 4A bars common law claims involving misconduct during the funds transfer process," but "the alleged misconduct must have occurred during the course of a funds transfer itself, and not outside or after completion of the process." *Baerg v. Ford*, No. 2014-CA-00762, 2016 Ky. App. LEXIS 19, at *9 (Ky. Ct. App. Feb. 19, 2016).

Cosmopolitan's common-law claims are based on the wire transfer itself. It seeks to hold PNC liable for allegedly mishandling the payment-order cancelation or later failing to return the funds. [*See* Record No. 16.] "Those matters fall within Article 4A's provisions." *McLaughlin v. Comerica Bank*, No. 21-12661, 2022 U.S. Dist. LEXIS 197970, at *17 (E.D. Mich. Apr. 18, 2022). Further, Cosmopolitan's only alleged harm is that "it was unable to

recover the transferred funds," which is an injury covered by Article 4A. *See* § 355.4A-402 ("If the sender of a payment order pays the order and was not obliged to pay all or part of the amount paid, the bank receiving payment is obliged to refund payment to the extent the sender was not obliged to pay."); § 355.4A-211 cmt. 1 ("If the conditions stated in this section are not met the attempted cancellation or amendment is not effective. If the stated conditions are met the cancellation or amendment is effective and rightful.").

Allowing Cosmopolitan's common-law claims to proceed would also create rights inconsistent with Article 4A because Chase, not Cosmopolitan, is the sender of the payment order to PNC. An official comment[5] to Section 4A-404 is instructive:

> Except in the case of a book transfer, in which the beneficiary's bank is also the originator's bank, *the originator of a funds transfer cannot cancel a payment order to the beneficiary's bank, with or without the consent of that bank, because the originator is not the sender of that order.* Thus, the beneficiary's bank may safely ignore any instruction by the originator to withhold payment to the beneficiary.

§ 355.4A-404 cmt. 3. Section 4A-402 requires the receiving bank to refund money that a *sender* unnecessarily paid. In this case, PNC would be required to refund Chase, and Chase would then be required to refund Cosmopolitan if cancelation of the payment order was successful. *See Grain Traders, Inc. v. Citibank, N.A.*, 160 F.3d 97, 102 (2d Cir. 1998) ("§ 4-A-402 allows each sender of a payment order to seek refund only from the receiving bank it

---

[5] "Beginning with the 2006 revisions to Kentucky's version of the Code, 'Official comments to the Uniform Commercial Code . . . represent the express legislative intent of the General Assembly and shall be used as a guide for interpretation of this chapter . . . .'" *Dean v. Commonwealth Bank & Trust Co.*, No. 2010-CA-0 02152, 2012 Ky. App. Unpub. LEXIS 1028, at *7 n.1 (Ky. Ct. App. Apr. 6, 2012) (quoting KY. REV. STAT. ANN. § 355.1-103(3) (LexisNexis 2006)). "Therefore, it behooves both bench and bar to read these official comments in their entirety." *Id.*

paid.").[6]  Cosmopolitan's common law claims are displaced by Article 4A because the Article addresses Cosmopolitan's underlying injury and PNCs alleged misconduct.  Cosmopolitan's common law claims would create rights inconsistent with the Uniform Commercial Code as adopted in Kentucky.

Cosmopolitan's punitive damages claim against PNC fails because its common law claims do not survive. The code provides that "neither consequential or special nor penal damages may be had except as specifically provided in this code or by other rule of law." KY. REV. STAT. ANN. § 355.1-305 (Lexis Nexis 2022); *see also JESCO Constr. Corp. v. Wells Fargo Bank, N.A.*, No. 1:20cv147, 2021 WL 9629459, at *11-12 (S.D. Miss. Mar. 11, 2021) (discussing how punitive damages are contingent upon survival of common law claims). Neither party has pointed to a section of the U.C.C. allowing punitive damages in this situation, and Cosmopolitan indicates that its punitive damages claim is based on its common law claims. [*See* Record No. 25, pp. 14-15.]

### IV.

Based on the foregoing analysis, it is hereby

**ORDERED** as follows:

1.  PNC's motion to dismiss Cosmopolitan's amended complaint as to PNC [Record No. 18] is **GRANTED**, in part, and **DENIED**, in part.

---

[6]  Neither party mentions section 4A-404 cmt. 3, and PNC has not argued that Count V fails for lack of privity.  *Cf. Grain Traders,* 160 F.3d at 106 ("We hold that Section 402 of Article 4-A imposes a privity requirement such that a sender seeking a refund for an uncompleted funds transfer may look only to the receiving bank to whom it issued a payment order and payment.").

2.  Plaintiff Cosmopolitan's claims against PNC for negligence *per se* (Count VI), conversion (Count VII), negligence (Count VIII), negligence *per se* for receiving stolen property (Count IX), and punitive damages as to PNC (Count X) are **DISMISSED**, with prejudice.

Dated: January 9, 2023.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky